**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| REGINA LOWTHER, *on behalf of herself and all others similarly situated*, | Case No.: 1:25-cv-08058 |
| Plaintiff, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| -against- | |
| WESTHAB, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

Plaintiff REGINA LOWTHER ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned attorneys, as and for her Class and Collective Action Complaint against Defendant WESTHAB, INC. ("Defendant"), states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA"), that she and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime wages, due to time shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that she and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime wages, due to time shaving, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

3.      Defendant is a not-for-profit corporation engaging in community development, specializing in the creation of affordable housing and providing services geared toward combatting homelessness and providing care for those who suffer from mental health issues and/or substance

abuse.

4.      Plaintiff, putative collective members, and putative class members are current and former non-exempt employees, including case managers, social service workers, and other similarly situated individuals employed by Defendant.  Plaintiff, putative collective members, and putative class members were all victims of Defendant's underpayment of employees. Specifically, Defendant failed to pay workers through a meal break that they were forced to work through. Moreover, Defendant was aware that employees' meal breaks were frequently interrupted by work and designed a clock-in system that did not permit employees to clock back in when their meal breaks were interrupted.  Additionally, Plaintiff, putative collective members, and putative class members were frequently required to work off-the-clock after hours. Defendant's improper pay practices are designed to, and in fact do, result in a windfall of improperly retained unpaid compensation owed to Plaintiff, putative collective plaintiffs, and putative class members.

5.      Plaintiff brings this action on behalf of herself and all others similarly situated to recover unpaid regular and overtime wages, as well as, statutory penalties, liquidated damages, interest, and reasonable attorney's fees and costs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*) and the wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 500 *et seq.* ("FLSA"), and Articles 6 and 19 of the New York Labor Law and the wage orders promulgated thereunder by the New York State Department of Labor and codified at 12 N.Y.C.R.R. §§ 135-146 ("NYLL").

6.      Plaintiff LOWTHER further alleges pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), that she is entitled to recover from Defendant due to Defendant's unlawful discrimination, harassment, and retaliation against her caused by

combating homelessness discrimination and retaliation against her, she is entitled to recover from Defendant: (1) compensatory damages, (2) punitive damages, (3) attorneys' fees and costs, and all other penalties the Court deems appropriate.

7.      To the extent that gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws) or claims seeking damages for failure to pay for all hours of work, are not covered by the protection of a State's wage laws, Plaintiff further alleges that they and others similarly situated are entitled to recover from Defendant, the following pursuant to breach of contract and unjust enrichment: (1) wrongfully withheld or diverted payments, (2) punitive damages due to egregious conduct, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over this controversy as Defendant's headquarters are located in Westchester County, New York.

10.     Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391(b)(3) as Defendant's headquarters, from which Defendant's policies and practices complained of herein emanated, is located in this district.

## PARTIES

11.     At all times relevant herein, Plaintiff LOWTHER was and is a resident of the State of New York, Kings County.

12.     At all times relevant herein, Defendant WESTHAB, INC. was and is a not-for-

profit corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at 8 Bashford Street, Yonkers, NY 10701. Defendant's address for service of process is located at the same address as their headquarters.

13.    Defendant's business has office locations throughout New York State.

14.    All of Defendant's branch locations are managed by the same executive management team operating from the same headquarters, which sets standardized policies and managerial training. Further, each branch location is engaged in related activities, shares common ownership, and has common business purpose.

(a) Defendant moves its employees between its office locations on an as needed basis.

(b) When seeking leave or company assistance with other employment issues, employees are directed to contact the same central office, which evaluates requests, hires, fires, trains managerial employees, and sets company-wide policy.

(c) Defendant maintains a centralized payroll department and human resources department. Defendant operates a single career page allowing interested people to apply to positions relating to all branches of its business. **Exhibit A** (Defendant's Website – Career Page).

(d) Defendant also owns and operates other nominally distinct corporate entities that share assets, managers, executives, owners, and employees with Defendant, and that engage in a common business purpose. Defendant is a joint employer of these nominally distinct entities and operates as a single integrated enterprise with them.

15.    Defendant engages in an enterprise whose annual volume of sales made or business done is not less than $500,000.00, the activities of which affect interstate commerce in that the employees of the Defendant handle goods and materials produced outside of New York (including

computers, laptops, office supplies, and other items) that have moved in interstate commerce, and the Defendant is thus an employer subject to the jurisdiction of the FLSA.

16.    At all relevant times, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, State wage laws, and any regulations thereunder. At all relevant times, the work performed by Plaintiff and Class members was directly essential to the business operated by Defendant.

17.    Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

18.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including case managers, social service workers, and other similarly situated individuals employed by Defendant, on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

19.    At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay Plaintiff and other FLSA Collectives for all hours worked, including overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek, due to Defendant's policies of time shaving. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

20.    The claims for relief are properly brought under and maintained as an opt-in

collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## **RULE 23 CLASS ALLEGATIONS**

21.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and non-exempt employees case managers, social service workers, and other similarly situated individuals employed by Defendant on or after the date that is six (6) years two-hundred-and-twenty-eight (228) days (pursuant to NY's Executive Order tolling during the COVID pandemic), or the relevant statutory period of each state's applicable labor law, prior to the filing of the Complaint in this case (the "Class Members").

22.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identities of the Class Members are determinable from the records of Defendant. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

23.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number rests are presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class.

24.     Plaintiffs' claims are typical of those claims which could be alleged by any member

of the Class, and the relief sought is typical of that which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendant, as alleged herein, of: (i) failing to pay wages, including overtime, due to time shaving; (ii) failing to provide wage and hour notices, at date of hiring and annually; and (iii) failing to provide proper wage statements.

25.     Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

26.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

27.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing

the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28.    Defendant and other employers throughout the country violate state wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a)  Whether Defendant employed Plaintiff and Class Members within the meaning of the state wage laws;

   b)  What were and are the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay Plaintiff and the Class Members;

   c)  At what common rate, or rates subject to common methods of calculation, was

and is Defendant required to pay Plaintiff and Class Members for their work;

d)  Whether Defendant properly notified Plaintiff and Class Members of their hourly rate and overtime rate;

e)  Whether Defendant properly compensated Plaintiff and Class Members for their hourly rate and overtime rate;

f)  Whether Defendant paid Plaintiff and Class Members for the actual hours that they worked;

g)  Whether Defendant provided wage and hour notices to Plaintiff and Class Members, at date of hiring and annually, per requirements of the NYLL; and

h)  Whether Defendant provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL;

## STATEMENT OF FACTS

*Wage And Hour Allegations*

30.    In or around November 5, 2024, Plaintiff was hired to work, and has worked, as a case manager for Defendant.  Plaintiff continues to work for Defendant as of the filing of the Complaint.

31.    At all relevant times, Plaintiff worked significant overtime hours as she worked approximately 70 hours per week.

32.    To track employee work time, Defendant utilized an electronic clock-machine at each of its offices.

33.    As part of employees' daily schedules, Plaintiff, FLSA Collective Plaintiffs, and Class Members were to take a one (1) hour long unpaid lunch break.

34.    Despite this lunch break being unpaid, Plaintiff's, FLSA Collective Plaintiffs', and

Class Members' meal breaks were frequently interrupted with work which needed to be performed during these meal breaks.

35.    Defendant was aware that employees were frequently required to work through meal breaks.  To prevent employees from being paid during these unpaid breaks, Defendant designed their clock system to prevent employees from clocking back in as working once they have clocked-out for a meal period.  In this way, Plaintiff, FLSA Collective Plaintiffs, and Class Members were prevented by Defendant from accurately recording their hours of work.

36.    At least twice per week, Plaintiff's, FLSA Collective Plaintiffs', and Class Members' meal breaks are interrupted by managers' emails/calls/texts requesting that the employee work through an unpaid break.

37.    In addition to working through meal breaks, Plaintiff, FLSA Collective Plaintiffs, and Class Members were asked to conduct work, without additional compensation, after-hours or on their days off.  The requested tasks could take anywhere from an hour to five (5) additional hours to complete.

38.    At least twice per month, Plaintiff's, FLSA Collective Plaintiffs', and Class Members are requested by managers to work to work after-hours or on days off.

39.    Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of NYLL and other state wage laws.

40.    Defendant knowingly and willfully operated their business with a policy of not properly compensating either FLSA overtime rate (of time and one-half) or the State wages and overtime (of time and one-half) to Plaintiff, FLSA Collective Plaintiffs, and Class Members, including due to Defendant's policy of time shaving.

41.    Defendant knowingly and willfully subjected Plaintiff, FLSA Collective Plaintiffs, and Class Members to time shaving of hours worked in violation of the FLSA and the State wage laws.

42.    Defendant was or should have been aware of their statutory requirements as employers, including specifically but without limitation the requirements under the FLSA and NYLL to pay Plaintiff and others similarly situated for all of the time they worked (and to pay hours over 40 per week at the premium overtime rate), and to make and preserve proper payroll records.

43.    However, Defendant knowingly failed to pay Plaintiff and others similarly situated all of the regular and overtime wages to which they were entitled, and to make and preserve proper payroll records.

44.    As such, the various violations of the FLSA and NYLL alleged herein were committed knowingly, willfully, and intentionally by Defendant.

*Plaintiff's, FLSA Collective Plaintiffs', and Class Members' Wage Theft Prevention Act Claims:*

45.    The State of New York has wage laws providing damages for the failure to provide accurate pay documents.  In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL— Defendant knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiffs and Class Members at the beginning of their employment with Defendant.

46.    Defendant further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped

employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468

(E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement

should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk*

*3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs

were received, they were not accurate insofar as they did not accurately reflect the hours *actually*

worked") (emphasis added).

47.    In failing to provide proper wage statements and notices, Defendant has failed to

comply with the law in a manner that entails a concrete harm to an interest identified by the

legislature of New York, As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage
> notices and statements, as required by NYLL §§ 195(1) and 195(3). These
> provisions were enacted as part of New York's Wage Theft Prevention Act
> ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of
> employees to seek civil and criminal avenues of remedy for their employers
> failing to follow labor law appropriately and the specifications therein." N.Y.
> Spons. Mem., 2010

> S.B. 8380. More specifically, the New York State Assembly passed the WTPA
> to address studies showing that a large number of employees were not being paid
> the wages owed to them, and that many employers were not adequately informing
> their employees of their wages and how they are calculated in language the
> employees could understand. *Id.* The New York State Assembly opined that
> existing penalties did not adequately deter employers from paying less than
> the wages owed, and stated that the WTPA would dramatically change this by
> increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20,
2020)

48.    Defendant knowingly and willfully operated their business with a policy of not

providing proper wage notices and statements as required by NYLL and other state wage laws.

49.    In failing to provide proper wage statements and notices, Defendant has failed to

comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified

by the State legislature of New York. Defendant's failure to provide such notices trivializes the

importance of these notices in protecting Plaintiff and Class Members' interest in ensuring proper pay. Despite Defendant's conduct, there is a reason why the State legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

50.     Here, Defendant's failure goes beyond generating a risk of harm to Plaintiffs and Class Members. Defendant's conduct actually harmed Plaintiff and Class Members. Defendant's failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates and the failure to provide a wage notice properly listing the rate and frequency Plaintiff and Class Members were entitled to get paid, deprived employees of the ability to contest Defendant's calculations, allowed Defendants to hide their wrongdoing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendant's failure to provide wage notices allowed Defendants to hide the proper frequency of pay to employees. Defendant's failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of compensation in a timely manner.

51.     Due to Defendant's failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue attempting to hide their wrongdoing, necessitating the current litigation.. The failure to provide notices continues to result in delayed payment of all proper wages owed to Plaintiff and

Class Members. This delayed payment caused Plaintiff and Class Members to struggle to timely pay bills and delay or forgo purchases.

52.     Further, the direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

53.     The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook

_____

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

§ 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

54.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

55.    Here, it is clear that Defendant's failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiffs with Article III standing.

56.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id.* at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

57.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and Class Members rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

58.    Whether or not any Plaintiff and Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

59.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A

worker who seeks credit for unreported income bears the burden of proof, 42
U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not
furnished the customary documentation. The government believes employers
who report earnings, because these reports are costly to make--they entail paying
a substantial tax. The government tends not to believe undocumented claims by
employees, because these claims are essentially costless yet could establish
entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the
Witvoets make the proper reports of their income.

*Calderon,* 999 F.2d 1101 at 1106.

60.    Here, the problem is not merely challenging but insurmountable. Plaintiff and

Class Members cannot even attempt to have their earnings report corrected because Defendants *did*

report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff

and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security

eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the

wages paid . . . to an individual in a calendar year,'" Plaintiff and Class Members were irreversibly

injured with respect to their social security benefits as soon as Defendants sent their W-2s to the

IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. §

413(a)(2)(A)(ii)).

61.    Furthermore, these violations are ongoing, as Defendants continue to engage in the

wrongful conduct described herein.

62.    Plaintiffs retained Joseph & Norinsberg LLC to represent Plaintiff, FLSA

Collective Plaintiffs, and the Class, in this litigation and has agreed to pay the firm a reasonable

fee for its services.

*Plaintiff's Individual NYCHRL and NYSHRL Claims Against Defendant*

63.    Plaintiff is a lesbian who presents in masculine attire and does not wear traditionally

feminine clothing.

64.     From the beginning of Plaintiff's employment, the Director of Social Services subjected Plaintiff to disparate treatment based on her sexual orientation and gender expression.

65.     The Director of Social Services imposed different work rules on Plaintiff than other similarly situated employees, including requiring Plaintiff to clock in at 8:45 a.m. while permitting other case managers to clock in at 8:40 a.m. and leave early.

66.     The Director of Social Services selectively enforced workplace policies against Plaintiff, including prohibiting Plaintiff from wearing a do-rag while permitting other employees, including male employees, to wear head coverings.

67.     In May 2025, Plaintiff parked her vehicle in the Assistant Vice President's designated parking spot, which was the only available parking space at the time.

68.     Other employees had previously parked in the same spot without incident or discipline.

69.     Despite this past practice, Defendant's management became upset with Plaintiff specifically for parking in the spot on this single occasion.

70.     On the same date, the Program Director intentionally blocked Plaintiff's vehicle with her own car, preventing Plaintiff from leaving the parking lot.

71.     When Plaintiff politely requested that the Program Director move her vehicle, the Program Director refused to do so.

72.     During this incident, the Program Director deliberately and repeatedly referred to Plaintiff as "Sir," knowing that Plaintiff is not male and intending to harass and demean Plaintiff based on her gender expression.

73.     Plaintiff filed a complaint with Human Resources regarding the Program Director's harassment and discriminatory conduct.

74.    Despite this complaint being made, no action was taken by Defendant's Human Resources Department.

75.    Instead, following Plaintiff's filing of the HR complaint, the Director of Social Services retaliated against Plaintiff by intensifying the retaliation, including issuing Plaintiff a disciplinary write-up for conduct she did not engage in.

76.    Said retaliatory actions were taken in direct response to Plaintiff's protected activity of filing a discrimination complaint.

77.    The above-described conduct, taken individually and collectively, created a hostile work environment based on Plaintiff's sexual orientation and gender expression.

78.    Defendant knew or should have known of the discriminatory and retaliatory conduct but failed to take prompt and effective remedial action.

## FIRST CAUSE OF ACTION
### (FLSA Collective Action)

79.    Plaintiff realleges and reasserts each and every previous allegation as if fully set forth herein.

80.    At all relevant times Plaintiff and the other FLSA Collective Plaintiffs were employees of the Defendants within the meaning of the FLSA, and were persons covered by and intended to benefit from the provisions of the FLSA.

81.    As alleged herein, Plaintiff and the other FLSA Collective Plaintiffs regularly worked regular and overtime hours for Defendants for which they were not paid, in violation of the FLSA.

82.    Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the other FLSA Collective Plaintiffs for all of the hours they worked, including overtime hours, when Defendants knew or

should have known such was due.

83.     As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and the other FLSA Collective Plaintiffs suffered damages in the form of unpaid regular and overtime wages.  Plaintiff and the other FLSA Collective Plaintiffs seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the FLSA.

## SECOND CAUSE OF ACTION
### (NYLL Class Action)

84.     Plaintiff realleges and reasserts each and every previous allegation as if fully set forth herein.

85.     At all relevant times Plaintiff and the other Class members were employees of the Defendants within the meaning of the NYLL, and were persons covered by and intended to benefit from the provisions of the NYLL.

86.     At all relevant times Plaintiff and the other Misclassified Subclass Members were employees of the Defendants within the meaning of the NYLL, and were persons covered by and intended to benefit from the provisions of the NYLL.

87.     At all relevant times the Defendants as a joint enterprise were an employer within the meaning of the NYLL.

88.     At all relevant times the Defendant was joint employers of Plaintiff and the other Class members, including Subclass Members.

89.     Defendant failed to compensate employees for all hours which served to reduce the average hourly wage of Plaintiff and others similarly situated to below the applicable NYLL minimum wage.  Furthermore, Plaintiff and Class Members frequently worked over 10 hours per day, but did not receive spread-of-hours compensation as required under the NYLL.  *See Espinosa*

*v. Delgado Travel Agency, Inc.*, 2007 U.S. Dist. LEXIS 15149 (S.D.N.Y. 2007) (using plaintiff's allegations of time-shaving to calculate whether employees made more than minimum wage for purposes of determining spread of hours applicability).

90.    As alleged herein, Plaintiff and the other Class members regularly worked in excess of 10 hours per day and 40 hours per week, but were not paid all of the wages to which they were entitled under the NYLL, including regular, overtime, and spread-of-hours wages.

91.    Defendant misclassified all Misclassified Subclass members as independent contractors.

92.    Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the other Class Members and Subclass Members for all of the hours they worked, including overtime hours, when Defendants knew or should have known such was due.

93.    Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the other Class Members and Subclass Members for all tips earned when Defendants knew or should have known such was due.

94.    Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the other Class Members and Subclass Members properly for all wages earned by engaging in unlawful deductions from Plaintiff and the other Class Members and Subclass Members' wages when Defendants knew or should have known such deductions were unlawful.

95.    Defendant also failed to provide Plaintiff and the other Class members with accurate wage statements and wage notices, as required under the NYLL.

96.    Defendant knew of and/or showed a willful disregard for the provisions of the

NYLL as evidenced by their failure to compensate Plaintiff and the other Class members for all of the hours they worked, including overtime hours, when Defendants knew or should have known such was due, and their failure to provide Plaintiff and the other Class members with accurate wage statements.

97.     As a direct and proximate result of Defendant's willful disregard of the NYLL, Plaintiff and the other Class members suffered damages in the form of unpaid regular, minimum-wage, overtime, and spread-of-hours wages.  Plaintiff and the other Class members seek judgment in an amount to be determined at trial for these damages as well as an award of statutory penalties, liquidated damages, interest, attorney's fees, and costs, as provided for under the NYLL.

### THIRD CAUSE OF ACTION
### (Discrimination And Retaliation Under The New York City Human Rights Law)
### (N.Y.C. Admin. Code § 8-101 et seq)

98.     Plaintiff realleges and incorporates all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

99.     The New York City Administrative Code §8-107(1) provides that:

It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

100.     Defendant violated the New York City Human Rights Law when they discriminated and retaliated against Plaintiff on the basis of her sex. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### (Discrimination And Retaliation Under The New York State Human Rights Law)
### (N.Y. Exec. Law § 292 et seq.)

101.    Plaintiff realleges and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

102.    Plaintiff's individual claims for discrimination and retaliation center on Defendants' reprehensible and disparate treatment of Plaintiff.

103.    The New York State Executive Law § 296(1)(a) provides that, "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

104.    Defendant violated the New York State Human Rights Law when it discriminated against Plaintiff on the basis of her sex. Defendant was aware of its employees' behavior, but failed to take any steps to mitigate the unlawful practice or accommodate Plaintiff.

105.    Defendant disciplined Plaintiff and lied about the reason she was written up. In reality, Plaintiff experienced adverse employment actions due to her sex. Such discrimination and retaliation is prohibited by the New York State Human Rights Law, which provides that it shall be an unlawful employment practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article." New York State Executive Law § 296(7).

106.    Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### (Violation Of Class Members' Contracts And/Or Defendants' Unjust Enrichment)
(brought on behalf of a Rule 23 Class)

107.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein

108.    To the extent that the Fair Labor Standards Act and/or State wage laws do not protect employees for a failure to compensate gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws), Plaintiff and Class members assert such claims under breach of contract and unjust enrichment.

109.    When Plaintiff and Class members entered into employment with Defendants, the parties formed implied contracts, which contain inherent duties of good faith and fair dealings, to pay employees at agreed-upon hourly rates for all hours worked.

110.    Plaintiff and Class members provided services to Defendants as required under their agreements. However, Defendant's failure to compensate all hours of work, including gap-time hours, breached the Plaintiff's and Class members' agreements.

111.    As a direct and proximate result of Defendant's failure to act fairly and in good faith, Plaintiff and Class members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

112.    Moreover, absent an implied contract, by virtue of Defendants' conduct as alleged herein, and Plaintiff's and Class members' performance, Defendant was unjustly enriched by the Plaintiff's and Class members' conduct and did not compensate Plaintiff and Class members fully.

113.    The circumstances are such that it would be inequitable to allow Defendants to retain the excess benefit from Plaintiff and Class members' conduct without paying fair value for it.

114.    As a direct and proximate result of Defendant's wrongful withholding of funds that should have been paid to Plaintiff and Class members, they have sustained damages in an amount according to proof at trial.

115.    Defendants' withholding of proper compensation from employees was done with malice and in conscious disregard of Plaintiff's and Class members' rights with the intent to cause injury to Plaintiff and Class members. Plaintiff and Class members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court assume jurisdiction herein and thereafter grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and state wage laws;

b. An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An award of unpaid wages, including overtime, due under the FLSA and state wage laws;

d. An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay proper wages, including overtime compensation, pursuant to the FLSA and state wage laws;

e. An award of statutory penalties as a result of Defendant's failure to comply with wage notice and wage statement requirements;

f. An award of statutory penalties, prejudgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

g. An award of all owed benefits owed pursuant to state wage laws;

h.   Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

i.   Designation of this action as a class action pursuant to F.R.C.P. 23;

j.   Designation of Plaintiff as Representatives of the Class;

k.   Statutory penalties and liquidated damages pursuant to the FLSA and state wage laws;

l.   Compensatory damages and punitive damages pursuant to the NYSHRL and NYCHRL to be determined at trial;

m.   Pre- and post-judgment interest;

n.   Plaintiff's costs and reasonable attorney's fees; and

o.   Together with such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

## NY BCL §630 NOTICE AND DEMAND

Plaintiff hereby gives this notice, in writing, to each shareholder of Corporate Defendants, and any of its parents, subsidiaries, or affiliated entities that is served with the summons and complaint in this action, that they intend to hold the shareholders liable under New York Business Corporation Law § 630. This notice is given within one hundred and eighty days after termination of the employment services of Plaintiff.

Plaintiff also demands an examination of the record of shareholders under paragraph (b) of section 624 (Books and records; right of inspection, prima facie evidence) of New York Business Corporation Law.

An action to enforce such liability shall be commenced within ninety days after the return of an execution unsatisfied against the corporation upon a judgment recovered against it for such services. The provisions of this paragraph shall not apply to an investment company registered as

such under an Act of Congress entitled "Investment Company Act of 1940."

Dated:  September 29, 2025
        New York, New York

                              Respectfully submitted,

                              **JOSEPH & NORINSBERG, LLC**

                        By:   _____
                              Robert Kansao, Esq.
                              *Attorneys for Plaintiff and the Putative Class*
                              825 Third Ave., Suite 2100
                              New York, New York 10022
                              (212) 227-5700
                              robert@employeejustice.com