UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REGINA LOWTHER, Plaintiff, -against- WESTHAB, INC., Defendant. | 25-CV-8058 (JGLC) **OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Regina Lowther brings this putative collective and class action against Defendant Westhab, Inc. Lowther alleges that Westhab failed to account for all of the hours she worked and, as a result, Lowther was denied appropriate regular, overtime, and spread-of-hours pay and made less than minimum wage. She maintains that Westhab has subjected her similarly situated coworkers to these same violations. Separately, Lowther contends that Westhab also discriminated against her based on her sexual orientation and gender presentation, and subsequently retaliated against her for filing a human resources complaint.

Before the Court now is Defendant's motion to dismiss part of the Complaint and Plaintiff's motion to certify a conditional collective, approve a distribution notice, and equitably toll the statute of limitations for prospective opt-in plaintiffs under the Fair Labor Standards Act. Despite the low burden for conditional certification, Plaintiff's complaint and motion, taken together, fail to adequately allege a common policy, plan, or practice that impacts her and other employees at Westhab. Additionally, Lowther's discrimination and retaliation claims lack a common nucleus of facts with her federal claim that would permit this Court to exercise jurisdiction over them. However, Lowther narrowly states a cause of action for breach of contract and unjust enrichment, and thus these claims survive as to Lowther only, together with

her unchallenged wage claims. Accordingly, the Motion for Conditional Certification of a Collective Action is denied, and the Motion to Dismiss is granted in part and denied in part.

## BACKGROUND

The following facts, unless otherwise noted, are taken from the Complaint (ECF No. 1, "Compl.") and presumed to be true for the purposes of this Order. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). Plaintiff Regina Lowther is a case manager at Westhab, Inc. ("Westhab"), a nonprofit dedicated to providing affordable housing and services for people facing housing instability, addiction, and mental health challenges. ¶¶ 3, 30. As a case manager, Lowther worked 70 hours each week.[1] ¶ 31. She alleges that Westhab managers routinely asked employees like Lowther to work through their unpaid lunch breaks and to work after hours or on days off. *See* ¶¶ 33–38. Managers contacted employees by phone or email during the lunch break at least twice each week and also asked case managers to work during off-hours at least twice each month. *Id.* Because of how the system worked to clock in and out of work, Lowther and other employees were unable to clock back into work when working through their unpaid breaks. ¶¶ 32, 35. Accordingly, those hours were not accurately logged, and Lowther was not paid for that work. ¶ 35. Westhab also did not provide a wage notice at the beginning of Lowther's employment or annually thereafter regarding her entitlements to receive overtime pay under the state labor law. ¶ 39.

In addition to her pay concerns, Lowther's complaint raises allegations of discrimination on the basis of her gender expression and sexual orientation. *See* ¶¶ 63–78. Lowther is lesbian and "presents in masculine attire." ¶ 63. She contends that management imposed different work

[1] Although Lowther is still employed at Westhab, the Court refers only to the allegations made as of the time of the Complaint.

rules on her—requiring her to clock in five minutes later than other case managers and permitting those other case managers to leave earlier in the day. ¶ 65. Management also prohibited Lowther from wearing a "do-rag," even though male employees were permitted to wear head coverings. ¶ 66. In one incident, Lowther contends that the Program Director harassed and demeaned her by repeatedly calling her "[s]ir"—despite knowing that Lowther was not a man. ¶ 72. That confrontation arose when Lowther parked her car in a spot designated for the company's Assistant Vice President. ¶ 67. Although Lowther understood such parking to be common practice among employees, her management was upset with Lowther, and, when Lowther later attempted to move her car, the Program Director blocked Lowther's vehicle from leaving. ¶¶ 68–71. It was at this time that the Program Director repeatedly referred to Lowther as "[s]ir." ¶ 72. Lowther subsequently filed a human resources complaint for the Program Director's conduct. ¶ 73. Plaintiff alleges that Defendant's Director of Social Services then retaliated against her for filing the human resources complaint by issuing a specious disciplinary write-up. ¶¶ 74–76.

Plaintiff brings five different claims in this action. On behalf of herself only, Lowther alleges sex discrimination and retaliation in violation of the New York City and New York State Human Rights Laws (Counts III and IV). Compl. ¶¶ 98–106. Next, Lowther asserts a series of claims on behalf of herself and others. She brings a proposed collective action under the Fair Labor Standards Act ("FLSA") for unpaid overtime (Count I), *id.* ¶¶ 79–83; a putative class action under the New York Labor Law ("NYLL") for misclassifying employees as independent contractors, failing to pay spread-of-hours wages, and ultimately paying what amounted to a rate below the minimum wage (Count II), *id.* ¶¶ 84–97; and a putative class action asserting breach of contract and unjust enrichment claims (Count V), *id.* ¶¶ 107–15. She purports to bring the

collective and class claims "on behalf of herself and all current and former non-managerial case managers, social workers, and other similarly situated employees employed by Defendant [Westhab]." ECF No. 29 at 8.

Defendant, on November 13, 2025, moved to dismiss Plaintiff's discrimination and retaliation claims (Counts III and IV) and her breach of contract and unjust enrichment claims (Count V). *See* ECF No. 11 ("MTD") at 1. Plaintiff also moved for conditional collective certification under the FLSA on February 25, 2026. *See* ECF No. 29 ("Collective Cert.").

## DISCUSSION

The Court's discussion proceeds as follows. First, despite the minimal showing required, Plaintiff's bid for collective certification fails. Next, her claims under city and state law are dismissed because they lack a common nexus with her federal claim that can give rise to subject matter jurisdiction. And last, Plaintiff's contract and unjust enrichment claims are permitted to proceed.

### I. Lowther Fails to Meet the Low Burden for Collective Certification

Lowther seeks certification of a collective action that includes employees in Westhab's various offices across New York state. In particular, she requests that the Court conditionally certify a collective of covered employees, including herself and all current and former non-managerial case managers and social service workers that worked at any Westhab location in New York since February 24, 2020. Collective Cert. at 1.

#### A. Legal Standard

The FLSA codifies a "joinder process" that provides similarly situated employees with a "right" to pursue their claims collectively. *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 n.1 (2013); 29

U.S.C. § 216(b)). Plaintiffs "must affirmatively 'opt in' to be part of the class and to be bound by any judgment." *Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010).

To initiate this process, an FLSA plaintiff must pursue a two-step "certification" to proceed as a collective action. *See id.* at 554–55. In the first step, the plaintiff must make a "'modest factual showing' that [she] and potential class members are similarly situated insofar as they 'were victims of a common policy or plan that violated the law.'" *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (quoting *Myers*, 624 F.3d at 555). The first-step standard is "very low" and calculated only to permit "a notice to be sent to potential opt-in plaintiffs." *Id.*; *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). "At this initial stage, 'the court does not resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations.'" *Jackson*, 298 F.R.D. at 158 (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)). Rather, through the plaintiff's non-conclusory allegations in the pleadings and affidavits, the Court need only determine that similarly situated plaintiffs "do in fact exist." *Lazaar v. Anthem Cos., Inc.*, 678 F. Supp. 3d 434, 439 (S.D.N.Y. 2023) (citations omitted).

Upon satisfaction of the "similarly situated" standard, a plaintiff will be permitted to issue an approved notice to potential opt-in plaintiffs and proceed through discovery as part of a collective action. *Id.* Subsequently, with the benefit of further factual development, the Court undertakes the second step to evaluate "whether the *actual* plaintiffs brought into the case are similarly situated." *Qiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 94 (S.D.N.Y. 2020) (quoting *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 645 (S.D.N.Y. 2010)). At that later juncture, the Court may "de-certify" the action and dismiss the claims of the opt-in plaintiffs if the record reveals that they are not, in fact, similarly situated. *See, e.g.*, *In re Amla*

*Litig.*, 320 F. Supp. 3d 578, 591 (S.D.N.Y. 2018). Throughout the process, including in the second, more demanding stage, the bar for collective certification under the FLSA is lower than that of traditional class actions under Rule 23, joinder under Rule 20, and consolidation under Rule 43. *Scott*, 954 F.3d at 520.

**B. Lowther Does Not Adequately Allege the Existence of Similarly Situated Employees**

In support of her motion for conditional certification, Lowther provides a declaration attesting to her personal knowledge with three exhibits. *See generally* ECF No. 31 ("Lowther Decl."). According to Lowther, Westhab has centralized executive management and human resources, standardized policies and managerial training, and a single payroll. Lowther Decl. ¶¶ 7–10. She "personally worked alongside and witnessed dozens of other workers like [herself]" at her office location in Glendale, New York. *Id.* ¶ 16; *see also id.* ¶ 11. In Westhab's Glendale office, Lowther explains, "we all work together, so I am able to see that we all utilize the same electronic clock-machine timekeeping system, and our workdays are structured similarly." *Id.* ¶ 20. Invoking "conversations with coworkers" and her "review[] [of] wage statements," Lowther also states that she can "personally observe that we are all subject to the same pay policies of Defendant." *Id.* She claims to have personally witnessed her coworkers "working long hours just as I do," and notes that "[a]ll case managers work approximately 70 hours per week." *Id.* ¶¶ 21–22. On October 17, 2025, after the Complaint in this action was filed, a member of management directed unspecified Westhab employees, including Plaintiff, "not to work through" their lunch periods. *Id.* ¶¶ 24, 43, 61; *see also* ECF No. 31-3.

Defendant challenges certification of a collective action on two grounds: the merits of Lowther's FLSA claim and the sufficiency of the evidence presented in support of her motion. *See* ECF No. 32 ("Collective Cert. Opp."). The first argument is readily disposed of. As

discussed *supra*, Defendant moved to dismiss most of Lowther's non-FLSA claims on Rule 12(b)(1) and 12(b)(6) grounds—notably omitting any argument as to the FLSA claim based on the sufficiency of the allegations. Still, Westhab takes the earnings statements attached to Lowther's motion, ECF No. 31-1, as an opportunity to challenge the merits of her claim and contends that Plaintiff's declaration fails to establish uncompensated overtime. Collective Cert. Opp. at 3–4.

A motion for preliminary certification of a collective action is not an opportunity to challenge the merits of an FLSA action. In assessing whether to approve sending a notice to potential opt-in plaintiffs, courts merely ask whether similarly situated employees exist—not whether Plaintiff has pled facts sufficient to state a claim under the FLSA. *See Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (citing *Lynch*, 491 F. Supp. 2d at 368 ("In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims."). There is, moreover, no reason to impute merits arguments made in opposition to the Motion for Conditional Certification to the Motion to Dismiss because the former was filed more than four months after the Motion to Dismiss. *See* MTD; Conditional Cert. Accordingly, Defendant's arguments that Plaintiff's earnings statements disprove her claim are misplaced in this motion and, thus, rejected.

However, the sufficiency of Plaintiff's evidence poses a greater problem to her motion, because Lowther bears the burden of showing that other similarly situated employees exist. *See Julian v. MetLife, Inc.*, 298 F. Supp. 3d 699, 702–03 (S.D.N.Y. 2018) (citations omitted). The Court first determines that Plaintiff's proposed collective is overbroad in scope, and then, with the narrowed scope, determines that Lowther fails to carry even her mild burden of demonstrating the existence of similarly situated employees.

### 1. The Proposed Collective Is Overbroad

The proposed collective action is overbroad because "a plaintiff must provide some actual evidence of a factual nexus between [her] and the rest of the class [s]he seeks to represent." *Fu v. Mee May Corp.*, No. 15-CV-4549 (KPF), 2016 WL 1588132, at *2 (S.D.N.Y. Apr. 20, 2016) (cleaned up). Lowther fails to adequately allege a nexus between her experience in Westhab's Glendale office and the experiences of employees in Westhab's other offices, and, similarly, between her experience as a case worker and the experiences of employees in other roles.

Lowther's brief argues that the same payroll processing, job functions, policies, and timekeeping system—which prevents clocking back in during lunch—apply across offices. *See* Collective Cert. at 14. But, she fails to allege that the supervisors assigning Lowther work during her lunch break or other hours were part of the executive management team, supervised employees at any of Westhab's other offices, or assigned work during off-hours pursuant to a policy or practice applicable beyond the Glendale office. *Cf.* Lowther Decl. ¶ 13.[2] Indeed, those managers appear to be based in the Glendale office, as Lowther has personally witnessed them assigning work to her colleagues in that office. *See id.* ¶¶ 14, 16, 20, 64–65. Moreover, Lowther does not allege that she has ever spoken with people in Westhab's other offices, or heard them discuss their hours. That the timekeeping system did not permit employees to clock back in during their mandatory lunch break would not violate the FLSA if there was no requirement that

[2] Contrary to her briefing, Lowther's declaration does not support that all employees report to "the same management hierarchy." *See* ECF No. 33 at 12. Rather, Lowther clearly states that she receives her instructions from and reports to certain supervisors, who certain other case managers also report to. Lowther Decl. ¶¶ 13, 20. She does not indicate that any of those supervisors are part of the "executive management team," which she alleges manages all branch locations and sets training for managers. *See id.* ¶¶ 7–13.

employees work during that time. *See e.g.*, *Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 462–63 (S.D.N.Y. 2011) (collecting cases that a break deduction policy, with no work requirement during that time, does not violate the FLSA). In this respect, Plaintiffs fail to establish that employees at other Westhab offices share a critical factual nexus with Lowther—a requirement to work during untracked and unpaid hours.

For the same reasons, Lowther also fails to allege an adequate nexus between her experience as a case manager and the experiences of employees in other roles. In the Glendale office, only nine of the twenty-five employees are case managers. Lowther Decl. ¶ 17. Lowther fails to provide any information about other employees' job duties, and she only affirms that case managers share the same supervisors as her and work 70 hours per week. *See id.* ¶¶ 20–22, 45–46. It is axiomatic that other members of the collective action must be "similarly situated with respect to their job requirements." *Myers*, 624 F.3d at 555. Absent any non-conclusory allegations of shared supervisors or similar job requirements, the sixteen Glendale employees in non-case-manager roles are not similarly situated.

**2. The Single Supportive Declaration Is Too Vague and Conclusory**

The requirement for demonstrating that similarly situated employees exist is "minimal": "Plaintiffs can meet this burden by showing that there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions." *Jackson v. ProAmpac LLC*, 694 F. Supp. 3d 352, 365 (S.D.N.Y. 2023), *abrogated on other grounds by Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024) (citations and internal quotation marks omitted). Although the bar is low, Plaintiff may not rely on only conclusory allegations to allege the existence of similarly situated employees. *See Myers*, 624 F.3d at 555 ("The modest factual showing cannot be satisfied simply by unsupported assertions." (citation and internal quotation marks omitted)). And, when only one plaintiff's personal observations are submitted to

furnish the evidentiary burden at this stage, courts typically look for a "robust affidavit." *Neris v. R.J.D. Constr., Inc.*, No. 18-CV-1701 (ADS) (AKT), 2019 WL 1458239, at *5 (E.D.N.Y. Mar. 29, 2019) (citing *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 452–53 (E.D.N.Y. 2014)); *see also Qiang Lu*, 447 F. Supp. 3d at 94 (collecting cases where one affidavit sufficed). The consensus in this District is that, "where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, [s]he must provide a minimum level of detail regarding the contents of those conversations or observations." *Reyes v. Nidaja, LLC*, No. 14-CV-9812 (RWS), 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015). Indeed, it is within the Court's discretion to deny a motion for conditional certification "where the only substantive allegations were nonspecific personal observations and conversations." *Id.* at *2.

Every allegation that Plaintiff makes in relation to other Westhab employees' experiences is a nonspecific—and often conclusory—statement. Although Lowther notes that she knows the "first names or partial names" of several coworkers, Lowther Decl. ¶ 41, none are provided. She does not recount any particular incident when a coworker's lunch was interrupted, or any particular conversation during which she gained information about coworkers' hours or pay. Lowther does not state how she is aware that coworkers were asked to conduct work "after-hours or on . . . days off," Lowther Decl. ¶ 29, when Lowther and her coworkers were, presumably, away from the office—nor does she reference any specifics about the unnamed coworkers' "wage statements" she "review[ed]", including what they contained, what period they covered, and what type of role they pertained to. She does not relay the job titles and/or responsibilities of the non-case managers who she has witnessed or conversed with about working extra hours. These details are not only relevant to determining whether other, similarly situated employees exist; they are also "critical in order for the Court to determine the appropriate scope of the

proposed class and notice process." *Sanchez v. JMP Ventures, L.L.C.*, No. 13-CV-7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014).

The closest that Lowther comes to providing a specific observation about her coworkers is recalling conversations, after the October 2025 management directive, during which her coworkers "expressed the same concern" that she had: "[H]ow can we follow the directive not to work through lunch when managers continue to contact us during lunch breaks and we cannot accurately record the time when we do have to work?" Lowther Decl. ¶ 43. But again, no names, specific conversations, or particular requests are identified, and this one incident—noting that some unspecified coworkers broadly agreed with Lowther—does not itself suffice.

In circumstances similar to these, courts typically find that a plaintiff cannot meet her burden by only gesturing broadly at observations of and conversations with other employees, absent any specifics. *See, e.g.*, *Reyes Cruz v. 70-30 Austin St. Bakery Inc.*, No. 18-CV-7408 (PAE) (HBP), 2019 WL 1929910, at *4 (S.D.N.Y. May 1, 2019) ("[W]here [the] plaintiff's sole affidavit does not provide any detail as to a single such observation or conversation, such as when or where the observations or conversations took place, that affidavit is insufficient to meet even the low evidentiary threshold required for conditional certification." (citation and internal quotation marks removed)); *Nidaja*, 2015 WL 4622587, at *2 (denying conditional certification where the sole affidavit stated, about the plaintiff's fellow employees, only that he observed them working more than forty hours per week and not receiving overtime wages); *Mata v. Foodbridge LLC*, No. 14-CV-8754 (ER), 2015 WL 3457293, at *2 (S.D.N.Y. June 1, 2015) (denying conditional certification where the plaintiff's sole affidavit, based on unspecified "observations and conversations," claimed only that other employees of defendant "were not paid their overtime and spread-of-hours wages . . . and were forced to sign fraudulent

documents"); *Sanchez*, 2014 WL 465542, at *2 (denying conditional certification where the plaintiff's sole affidavit did not "provide *any* detail as to a *single* such observation or conversation," resulting in "a list of generalized allegations that have been molded into a declaration which reads similarly to the complaint").

Plaintiff's cited cases in support of conditional certification are also readily distinguishable. In each case, the plaintiff or plaintiffs provided substantially more information about other employees than Lowther did here. *See, e.g.*, *Alberto v. Rico Pollo #2 Rest. Corp.*, No. 18-CV-4762 (BMC), 2018 WL 6813057, at *1 (E.D.N.Y. Dec. 26, 2018) (identifying five coworkers by name and specifying two who told the plaintiff that "they were paid [a] fixed salary regardless of how many hours they worked"); *Neris*, 2019 WL 1458239, at *2 (relying on one plaintiff's affidavit that named eighteen individual coworkers who the plaintiff had personally witnessed work more than 40 hours per week and had learned, by discussion, were not making overtime pay); *Rosario v. Valentine Ave. Disc. Store, Co,. Inc.*, 828 F. Supp. 2d 508, 514–15 (E.D.N.Y. 2011) (including affidavits from two impacted employees that identified a third employee by name who had specifically shared that he was not paid the minimum wage or compensated properly for overtime hours worked); *Alvarez v. Schnipper Rests. LLC*, No. 16-CV-5779 (ER), 2017 WL 6375793, at *3 (S.D.N.Y. Dec. 12, 2017) (mentioning five colleagues by name that were required to engage in specific non-tipped tasks and other FLSA violative actions).

In any event, Lowther's allegations of differential treatment doom her bid for a collective action. The Complaint alleges that Lowther's management applied "different work rules" with respect to her hours when compared to other, similarly situated employees, who were permitted to leave work early. *See* Compl. ¶ 65. On this front, the Complaint plainly contradicts Lowther's

subsequent declaration, which states that "I personally observe [my coworkers] reporting to work at similar times as me, performing the same and/or similar tasks as me and as each other, and I personally observe that they work the same or a similar amount of hours per week as me . . . ." Lowther Decl. ¶ 46. This identified inconsistency is not considered in relation to Lowther's credibility, which would be improper at this stage of the litigation, but rather to ascertain the well-pled allegations currently before the Court. *See Lynch*, 491 F. Supp. 2d at 368 (holding that "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" in resolving whether to conditionally certify a collective). Plaintiff's complaint and briefing simultaneously instruct the Court, on the one hand, that she was forced to work different hours than her coworkers and, on the other hand, that she observed her coworkers working similar hours to her. Based on this contradiction and the scant and conclusory assertions in the sole declaration filed in support of this motion, the Court cannot determine that similarly situated plaintiffs "do in fact exist." *See Lazaar*, 678 F. Supp. 3d at 439.

Ultimately, "the factual showing" at this stage, "even if modest, must still be based on some substance." *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010); *see also Sanchez*, 2014 WL 465542, at *1 ("[W]hile a plaintiff's burden of proof is low, it is not non-existent—certification is not automatic." (cleaned up)). Absent that showing, Plaintiff's bid for collective certification fails.

## II. The Court Lacks Subject Matter Jurisdiction over Lowther's Discrimination Claims

Defendant first moves to dismiss under Rule 12(b)(1) Plaintiff's state and city discrimination and retaliation claims (Counts III and IV of the Complaint) on the ground that the Court lacks subject matter jurisdiction over these claims. As explained in detail below, the Court agrees that these claims are improper in this action.

**A. Legal Standard**

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (internal citation omitted). Thus, in resolving a motion to dismiss for lack of subject matter jurisdiction, the court "must accept as true all material factual allegations in the complaint" but "may not draw any jurisdictional inferences in favor of the plaintiff." *Blecher v. Holy See*, 146 F.4th 206, 216 (2d Cir. 2025) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004); citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

**B. Lowther's Discrimination Claims Are Distinct from Her Wage Claims**

The Court only possesses original jurisdiction over Plaintiff's FLSA claim in this case, and thus Plaintiff relies on supplemental jurisdiction to permit her FLSA, NYLL, common law, discrimination, and retaliation claims to be heard together. However, a federal court possesses supplemental jurisdiction only over claims "that are so related to" the claims over which the court has original jurisdiction that they form "the same case or controversy." 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367(a), courts look for state-law claims that "shar[e] a common nucleus of operative fact with the federal-law ones." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025) (cleaned up). "[I]n determining whether federal and nonfederal claims share a common nucleus of operative fact, 'the court should look to whether the evidence likely to be used in the specific case in addressing the federal claim is likely to substantially overlap [with] that used to address the state-law claims.'" *Thomas v. EONY LLC*, No. 13-CV-8512 (JPO), 2015 WL 1809085, at *5 (S.D.N.Y. Apr. 21, 2015) (quoting *BLT Rest. Grp. LLC v. Tourondel*, 855 F. Supp. 2d 4, 11 (S.D.N.Y. 2012)). Under this standard, the Court readily possesses

supplemental jurisdiction over the NYLL and common law claims, which pertain to Plaintiff's work hours and obligations just like the FLSA claim.

However, Plaintiff argues that her wage, discrimination, and retaliation claims also involve "significant factual overlap." ECF No. 15 ("MTD Opp.") at 2. The Court disagrees. Plaintiff's wage claims involve a narrow inquiry into the hours Plaintiff worked, the compensation she received, Westhab managers' knowledge of her work hours, and whether Plaintiff was an "employee" for purposes of wage and hour laws. *See, e.g.*, *Perry v. City of New York*, 78 F.4th 502, 509 (2d Cir. 2023) ("If the employer suffers or permits the work—either by requiring it, knowing about it, or failing to exercise reasonable diligence to discover it—then it must compensate the employee . . . ."); *Thomas*, 2015 WL 1809085, at *5 ("The evidence supporting the overtime claims will involve testimony as to the number of hours Plaintiffs worked, and evidence as to whether Plaintiffs were 'employees' of Defendants for purposes of the wage and hour laws.").

On the other hand, the sex and gender discrimination claims require Plaintiff to show that she "has been treated less well than other employees because of her gender." *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 671 (S.D.N.Y. 2012) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S. 2d 27, 39 (2009)); *see also Thomas*, 2015 WL 1809085, at *5. Or, in the case of a retaliation claim, that Plaintiff suffered an adverse employment action for participating in protected activity that Defendant knew about. *Baker v. Bridge Inc.*, 805 F. Supp. 3d 521, 550 (S.D.N.Y. 2025) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). There is little factual overlap in the development of these claims, particularly in light of the Court's rejection of collective certification.

Plaintiff erroneously maintains that the shared "employment relationship, workplace, time period, and supervisory structure" between Plaintiff's federal claim and discrimination and retaliation claims satisfy the statutory requirement. *See* MTD Opp. at 2. Each of these categories that Plaintiff identifies ultimately collapses into the employment relationship between Lowther and Westhab, which, standing alone, cannot establish the requisite common nucleus of operative fact to hear state and federal claims together. *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 468 (S.D.N.Y. 2008). In parallel circumstances, several courts in this District have found that no supplemental jurisdiction exists to hear discrimination claims appended onto wage and hour claims. *See, e.g.*, *Guerra v. Trece Corp.*, No. 18-CV-625 (ER), 2020 WL 7028955, at *7 (S.D.N.Y. Nov. 30, 2020) ("[T]he claims must arise out of the same series of events."); *Thomas*, 2015 WL 1809085 ("[T]he sexual harassment, disability discrimination, and tort claims involve significantly different sets of facts from the wage and hour claims."), at *5–6; *cf. Cho v. Osaka Zen Spa*, No. 19-CV-7935 (ER), 2021 WL 1736813, at *6 (S.D.N.Y. May 3, 2021) (granting supplemental jurisdiction where the plaintiff alleged "that the defendants failed to pay her wages in accordance with the FLSA *because of* her disabilities" (emphasis in original)).

In her opposition, Plaintiff misinterprets the relevant standard for supplemental jurisdiction. MTD Opp. at 3–7. Although supplemental jurisdiction "is in some measure discretionary," *Royal Canin*, 604 U.S. at 31, the Court may not use the traditional factors of 28 U.S.C. § 1367(c), which guide whether to *decline* to exercise jurisdiction, where it has no jurisdiction to begin with. *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) (explaining that consideration of the traditional factors occurs only after a court has found that Sections 1367(a) and 1367(c) are satisfied); *Guerra*, , 2020 WL 7028955, at *8 (rejecting the same argument). Here, Plaintiff's discrimination and retaliation claims fail to meet the

requirements for supplemental jurisdiction under Section 1367(a). Accordingly, Counts III and IV are dismissed from the Complaint, and leave to amend is denied.

## III. Lowther's Common Law Claims May Continue

Defendant next argues that the common law claims for breach of contract and unjust enrichment fail because the Complaint does not adequately allege the existence of a contract and because the statutory schemes for wage law violations displace unjust enrichment as a remedy. MTD at 10–11. Both arguments are unavailing.

### A. Legal Standard

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

### B. The Common Law Claims Are Appropriately Pled as Alternatives to the Statutory Wage Claims

To state a claim for breach of contract under New York law, a complaint must allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Baldia v. RN Express Staffing Registry LLC*, 633 F. Supp. 3d 693, 714 (S.D.N.Y. 2022) (quoting *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019)). "New York courts require plaintiffs to plead the provisions of the contract upon which the claim is based—in other words, a complaint in a breach of contract action must set forth the terms of the agreement upon which liability is predicated." *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 708 F. Supp. 3d 385, 400 (S.D.N.Y. 2023) (cleaned up). "At the motion to dismiss stage, the court resolves any contractual ambiguities in favor of the plaintiff, and if the plaintiff has an arguable claim under the contract, then the claim should not be dismissed." *Baldia*, 633 F. Supp. 3d at 714 (quoting *Hermant Patel M.D., P.C. v. Bandikatla*, No. 18-CV-10227 (LGS), 2019 WL 6619344, at *2 (S.D.N.Y. Dec. 5, 2019)).

The Court finds that, here, Plaintiff narrowly states a claim for breach of contract. The Complaint alleges the existence of an "implied contract[]" for Westhab to pay its employees their agreed-upon hourly rates for all of the hours they work. Compl. ¶ 109. The relevant provision has thus been identified, and there is some precedent in this Circuit for permitting a claim to move forward in these circumstances. *See Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 454 (E.D.N.Y. 2014). Plaintiff maintains that she worked 70 hours weekly and that Defendant did not pay her for all of those hours. *See* Compl. ¶¶ 31, 36–37, 81, 89. Lost wages furnish clear damages. To the extent that there was no contract, Plaintiff pleads unjust enrichment as an alternative theory. *See Ortiz v. Consol. Edison Co. of N.Y., Inc.*, 801 F. Supp. 3d 260, 273

(S.D.N.Y. 2025) ("Rule 8 affords litigants substantial leeway to plead alternative, and even inconsistent, claims." (cleaned up)).

As to the unjust enrichment claim, Plaintiff also avoids Defendant's duplication concern by pleading it only "[t]o the extent that" the FLSA and NYLL do not protect Plaintiff against "claims for unpaid wages for hours worked up to forty." Compl. ¶ 108. "[W]hile a plaintiff cannot obtain a double recovery under the FLSA and state unjust enrichment law, there is no bar to pleading both claims simultaneously." *Chaluisan v. Simsmetal E. LLC*, 698 F. Supp. 2d 397, 406–07 (S.D.N.Y. 2010); *see also Mendez*, 2 F. Supp. 3d at 454 ("District courts in this Circuit have permitted plaintiffs to proceed on such breach of contract claims for straight wages in conjunction with FLSA and NYLL overtime claims"); *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 116 (2d Cir. 2013) ("For such [gap-time] claims there seems to be no lack of a state remedy, including a basic contract action."). Under similar circumstances, courts in this Circuit have permitted plaintiffs to proceed with breach of contract and unjust enrichment claims that may overlap with FLSA and NYLL claims. *See, e.g.*, *Mendez*, 2 F. Supp. 3d at 454–58 (permitting leave to amend to include parallel claims for breach of contract and violations of the FLSA and NYLL); *Chaluisan*, 698 F. Supp. 2d at 409 (permitting an unjust enrichment claim to proceed until discovery reveals whether the claim is duplicative with a statutory claim). Accordingly, the Motion to Dismiss Plaintiff's breach of contract and unjust enrichment claims (Count V) is denied.

**CONCLUSION**

For the foregoing reasons, the Motion to Certify a Collective Action is DENIED, and the Motion to Dismiss is GRANTED in part and DENIED in part. Although the sex discrimination and retaliation claims (Counts III and IV) are dismissed from this action without prejudice to

refiling in state court, Plaintiff may proceed in this action with her individual claims under the FLSA, NYLL, and common law (Counts I, II, and V). The Clerk of Court is directed to terminate ECF Nos. 11, 28, and 34.

Dated: September 17, 2026
White Plains, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge